## MANDRELL v. STATE.

No. A-11526. April 23, 1952.

(244 P. 2d 345.)

White & Parris, Eufaula, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J. The defendant, Levi Franklin Mandrell, was charged in the county court of McIntosh county with the offense of driving a motor vehicle while under the influence of intoxicating liquor. He was tried, convicted by a jury, his punishment fixed at a fine of $250, and he has appealed.

For reversal, defendant in his brief contends, first of the "insufficiency of evidence to warrant the jury to return a verdict of guilty"; and, second, "failure of the court to instruct on circumstantial evidence."

The evidence is very short, covering a total of only eleven pages in the case-made. The state used three witnesses, and the defendant did not offer any evidence. The information was filed on August 10, 1949, and the offense was alleged to have been committed on that day. Defendant was not tried until November 1, 1950, more than a year after his arrest.

Highway patrolman W. R. Livingston testified that he had been to Eufaula, and was on his way back to McAlester, and at a point about three miles south of Eufaula, near the intersection of U. S. Highway 69 and State Highway 9, he noticed several cars and people and

"when I stopped, why, I found this car had been driven off the highway, out on the shoulder, and the front wheels had dropped off over the edge of the road fill, and the car was high-centered at that point. And Mr. Mandrell was still under the wheel of the vehicle at that time; and we assisted him out of the vehicle, and I placed him in the patrol unit, and we had to get a truck to pull his car back off the high center. * * * Q. Now, did he make any statement to you at that time, from the time you got up to the car to the time you got him back here in the sheriff's office? A. Yes, when the time came, the thing I asked him was where he had started, and he said, 'I started fishing', down near Clayton, I believe he said. And he wanted to know where he was at the present time, and I told him he was near Eufaula; and he said he had no knowledge of driving the last several miles he had travelled. Q. Did he say 'I have no knowledge' or did he say: 'I don't remember'? A. Well, he didn't remember."

This witness testified that the car could not have been driven at a high or great speed, or it would have gone over the fill; that defendant had an alcoholic odor about his breath, and that he was unable to walk without being assisted. He was not asked whether or not the defendant was, in his opinion, intoxicated, and did not testify that he was, other than as above quoted.

C. F. Kelly, a funeral director, testified that he received a call and went to the intersection mentioned soon after noon on the date in question; that he found a car off the road and the defendant was in the car, under the wheel. Defendant was neatly dressed, made no statement to him, and that he was in "an abnormal condition." On cross-examination when asked what he meant by "abnormal condition", and if the defendant was sleepy, he replied: "Well, he was over the wheel. I don't know whether he was conscious or unconscious at that time, but he didn't know or say anything when we talked to him."

Jack Brady, jailer, testified that when the trooper brought defendant in "he was pretty wobbly"; there was a "pretty strong" odor of alcohol about defendant's breath, and, "Well, I would call him tight, pretty full"; and that the trooper helped him get inside.

This was the gist of the evidence against this defendant. There cannot be any reasonable doubt but that he was under the influence of intoxicating liquor when arrested.

Our problem is to determine whether or not the evidence is sufficient to support the verdict and judgment of conviction. The defendant, of course, had stated to the officers that he had started fishing. It is noticeable that he did not say "we" had started fishing, and he stated that he had no knowledge of driving the last several miles. He had been proceeding very slowly, otherwise his car would have rolled down the embankment where lodged on high center. He had not been in his precarious position too long, because Officer Livingston would without doubt have noticed him as he drove to Eufaula, rather than as he was returning to McAlester. The dangerous position of the car would no doubt have gotten the attention of any other motorist as attested by the number of people near the car when the officer arrived. The door was stuck, according

to the evidence of witness Kelly, who had come with an ambulance in response to a call, and some effort was required to get it open. The evidence does not disclose whether or not there were other doors that were stuck or that did not open over a sheer drop from which a companion could have already emerged. The car was headed south, and defendant stated that he had started to Clayton to fish, which was south. The Pittsburg county line was only a very short distance south and while there is some slight doubt as to whether or not the defendant drove his car the last few miles, according to his statement, he did say he was driving south so that he is bound to have been driving in McIntosh county, which we could not conclude if he had stated that he had been driving north. The defendant did not testify as in Bristow v. State, 86 Okla. Cr. 97, 189 P. 2d 629, and a number of other "drunk driving" cases where the convictions were reversed.

While this is a close case, there being much that the prosecuting authorities apparently could have but did not develop, still such proof as was submitted was not only consistent with defendant's guilt, but inconsistent with any other rational conclusion. Stump v. State, 66 Okla. Cr. 391, 92 P. 2d 616. But the only reason we can so conclude is that there was nothing in opposition. The state prevails "only by a nose" when by a little effort there are indications it could have done much better. Why the officers did not quiz the spectators found at the scene to determine if anyone saw defendant driving the vehicle, or saw any companion, which is usual on a fishing expedition, is a mystery. Likewise is a mystery why the officers, finding the defendant so free to talk at the time, did not ask him the specific questions as to whether he had a companion or whether he drove the car to the point where found, what he had been drinking, etc.

The other proposition argued by the defendant is that the trial court failed to instruct on circumstantial evidence. Counsel admit that no instruction on circumstantial evidence was requested. It has been often, held by this court that the failure to instruct on circumstantial evidence does not constitute error when such instruction is not requested. Lincoln v. State, 86 Okla. Cr. 415, 193 P. 2d 618, and cases therein cited.

By reason of what has been said it is the thought of this court that justice would best be served by reducing the fine here imposed from $250 to $100, and as so modified, the judgment of the county court of McIntosh county is affirmed.

BRETT, P. J., and JONES, J., concur.