## DEWEY STOKES v. STATE.

No. A-9380. Jan. 13, 1939.
(86 P. 2d 642.)

H. M. Vance, of Tahlequah, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J.  This appeal is from a judgment of conviction for unlawfully transporting intoxicating liquor and sentence in accordance with the verdict of the jury to confinement in the county jail for 30 days and to pay a fine of $50 and the costs.

The errors assigned and argued in the brief are that the court erred in overruling the defendant's motion to suppress the evidence, and that the verdict is contrary to the law and the evidence.

The state relied for this conviction upon the testimony of three witnesses, G. C. Bishop, sheriff of Cherokee county, Billie Ballew, undersheriff, and Frank Goodacre.

Sheriff Bishop testified that on November 29, 1936, having received information that the defendant had a load of liquor, four or five miles northeast of Tahlequah, he with Undersheriff Ballew drove to that neighborhood and parked the car at the old mill near the home of Frank Goodacre; Jim Brown, who was with them, left the car, and in about 15 minutes Brown came running back and the defendant was following him, cursing and carrying a pistol in his hand.  When they reached the car he stopped the

defendant and took his pistol from him. He asked the defendant how much whisky he had. The defendant said that he was a poor boy and trying to get by; that he was a deputy sheriff and demanded the return of his gun. He produced a written instrument, on the head of which was the name of an Arkansas wholesale liquor house, and that the defendant was liquor hauler.

The officers took the defendant back to the Goodacre place and there found a case of whisky near the defendant's car, it was bottled in bond liquor, the case of whisky in the yard was about 20 steps from the house.

Billie Ballew testified that he was with the sheriff when the defendant came by chasing Jim Brown, cursing and carrying a pistol in his hand. When the defendant came up they stopped him and took his gun from him. He said he had a right to carry a gun, and he showed them a letter. The letterhead was that of a wholesale liquor house in Arkansas. That he returned the letter to the defendant, saying it was no good over here.

The defendant stated to Sheriff Bishop that he was a poor boy and wanted to know if there was some way to get out of this; that he loaded the case of whisky that was near the defendant's car into their car and went into the house and found four more cases, which he carried out and loaded in their car; that they arrested the defendant; that when he loaded the car the defendant said that some one had stolen a case, that he had six cases; that the defendant's car had an Arkansas tag.

Frank Goodacre testified that he lives five miles north of Tahlequah, on No. 10 Highway, near the old saw-mill site; that when he returned home that evening he saw the defendant's car parked down by the front gate, and they were loading what he took to be whisky, that Dewey Stokes did not live at his place and did not have a room rented there; that he never authorized Dewey Stokes to bring the whisky there.

At the close of the evidence for the state, the defendant interposed a demurrer to the same and moved the court to instruct the jury to return a verdict of not guilty, which motion was overruled and exception allowed.

As a witness in his own behalf, Dewey Stokes testified that he formerly lived in Cherokee county, but was raised over in Arkansas and lived back and forth; that he was a deputy sheriff of Cherokee county and had a deputy sheriff's commission in Arkansas; that he was on his way back to Arkansas after attending a chicken fight at Sallisaw, and stopped at Frank Goodacre's that evening; that Mrs. Goodacre invited him to have supper there; that he was driving his own car, but did not take any liquor there, that the liquor the officers found was not his liquor.

On cross-examination he stated that he had a pistol with him, and that he chased Jim Brown with the pistol; that he had family trouble with Jim Brown, but never did have any trouble with Brown over liquor; that he saw him standing there by the road, and thought he would just chase him off down the road with the pistol. He denied that he stated to officer Ballew that he brought the liquor to the Goodacre place, and that he did not want them to prosecute Goodacre, because it was not Goodacre's liquor, and that he brought the liquor there.

The contention that the evidence was procured by an unreasonable search and seizure and in violation of the defendant's constitutional rights is wholly without merit.

It is the well-settled doctrine in this state that the right to immunity from an unlawful search and seizure and its consequences is a personal right, extending to the property, person and effects of the accused only. The defendant has no right to complain of an illegal search and seizure on the premises of another, even though the evidence to be used against him be there obtained. Phelps v. State, 33 Okla. Cr. 380, 244 P. 452; Hardy v. State, 35

Okla. Cr. 124, 248 P. 874; Klaber v. State, 35 Okla. Cr. 238, 250 P. 142.

In Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052, it is said:

"The right to complain of an illegal search and seizure is personal, and where a defendant is charged with transporting whisky found in the possession of a codefendant and denies knowledge, ownership, or possession of the whisky, he cannot complain of an illegal search of his codefendant."

It is also contended that the evidence is not sufficient to support the verdict.

An examination of the record convinces us that there was sufficient evidence to warrant the submission of the case to the jury.

No other reason for a reversal of the judgment being urged and no substantial error appearing in the record, the judgment of the lower court is affirmed.

BAREFOOT and DAVENPORT, JJ., concur.